**In the Matter of Harold E. KRAUSE.**

**No. 96–272–M.P.**

Supreme Court of Rhode Island.

May 28, 1996.

David Curtin, Chief Disciplinary Counsel, for Petitioner.

Robert Mann, Providence, for Respondent.

## OPINION

PER CURIAM.

This matter is before the Court pursuant to a decision and recommendation of the Supreme Court Disciplinary Board (board) that the respondent, Harold E. Krause, be suspended from the practice of law. Article III, Rule 6(d), of the Supreme Court Rules of Disciplinary Procedure provides in part:

> "If the [Disciplinary] Board determines that a proceeding * * * should be concluded by public censure, suspension or disbarment, it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order."

The facts giving rise to these proceedings are as follows. The respondent was retained by Dolores E. Vince (Vince) to represent her in a claim for personal injuries. In June of 1992 respondent settled the personal-injury claim for a total amount of $43,500. The respondent received these funds and deposited that amount into his client account. After deductions for expenses and for counsel fees, Vince was entitled to receive $26,464.50. The respondent transferred these funds from his client account to his business checking account. On or about December 4, 1992, approximately five months after receiving the settlement proceeds, respondent mailed a check to Vince in payment of her share of the personal-injury claim. When Vince presented the check for payment, she was advised that respondent had issued a stop-payment order on the check, and the check was not honored. On or about January 11, 1993, respondent hand-delivered a second check to Vince in the amount of $16,544.50 and a cash payment in the amount of $10,000. The second check provided to Vince was postdated, and she was advised by respondent not to cash the check at that time as sufficient funds were not in the account. Subsequently, the check was honored when presented for payment, and Vince received the funds to which she was entitled.

While the Vince matter was pending, respondent also represented his legal secretary, Helen DeMuth (DeMuth), in an unrelated personal-injury claim. On January 12, 1993, one day after hand-delivering the above-noted funds to Vince, respondent and DeMuth endorsed a settlement check in the amount of $16,000, which was received in full settlement of DeMuth's personal-injury claim. These funds were deposited into respondent's business-checking account. After deductions for payment of medical bills in the amount of $2,932.64, expenses, and legal fees for respondent, DeMuth was entitled to receive $9,619.26.

On January 20, 1993, respondent gave DeMuth a check drawn on his business checking account in payment of her share of the personal-injury settlement. When DeMuth presented the check for payment, she was advised that the check would not be honored as there were insufficient funds in the account. The respondent admitted to DeMuth that there were insufficient funds in the account as he "had some bills to pay." A portion of DeMuth's funds had been used by respondent to satisfy his obligation to Vince.

On January 21, 1993, respondent provided a second check to DeMuth in the amount of $8,000 in partial satisfaction of his obligation to her. This check was honored when presented for payment. On February 1, 1993, an additional check in the amount of $1,619.26 was provided by respondent to DeMuth in full satisfaction of her share of the settlement proceeds. This check was honored when presented for payment.

The respondent did not make timely payment of DeMuth's medical bills, funds for the payment of which he had withheld from her settlement. On April 28, 1994, he forwarded payment directly to DeMuth in the amount of $1,532.64 as partial payment for the unpaid medical expenses. At that time he affirmed his intention of remitting the remaining $1,400 directly to the physicians who were owed medical fees by DeMuth.

On March 28, 1995, a Petition for Disciplinary Action was filed against respondent for his conduct in the representation of Vince and DeMuth. After the filing of the petition, respondent paid $200 toward DeMuth's outstanding medical bill, leaving a balance owed of $1,200. This amount remained outstanding as of the date of the disciplinary hearing, which took place on September 6, 1995. The respondent paid the remaining amount prior to his appearance before this Court on April 18, 1996.

The board found that the conduct of respondent violated Rules 1.15(a); 1.15(b); and 8.4(c) of Article V of the Supreme Court Rules of Professional Conduct. After review of the record of these proceedings, we accept the findings of fact made by the board and concur with the board's conclusions in regard to respondent's violation of the cited rules.

■ Rule 1.15(a) provides in pertinent part, "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." The clear purpose of this rule is to prohibit the commingling of client or third-party funds with funds belonging to an attorney, to safeguard those funds, and to prohibit conversion of those funds. The respondent violated this rule in his representation of Vince and DeMuth. He intentionally transferred Vince's funds from his client account to his business account, thereby commingling her funds with his own. He subsequently converted a portion of those funds for his own use. DeMuth's funds were never placed in the appropriate account. Upon receipt, those funds were immediately deposited into the business account, becoming commingled with respondent's own moneys, and a portion of those funds were converted to satisfy Vince's claim.

Rule 1.15(b), as applicable to these proceedings, provides:

"Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule * * * or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds * * * that the client or third person is entitled to receive."

■ The respondent did not attempt to forward any funds to Vince until some five months had elapsed from the date he received her settlement proceeds. An additional month went by before Vince received her full settlement. DeMuth's medical bills remained unpaid for a period of three years before payment was made in full. This does not constitute prompt delivery of funds as mandated by the rules.

■ Rule 8.4(c) provides that "[i]t is professional misconduct for a lawyer to * * * engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The respondent's failure promptly to pay funds owed to clients and third parties, conversion of funds for his own use, and submission of payments to clients by checks that were dishonored for insufficient funds directly violates the clear provisions of this rule.

■ It was the recommendation of the board that the respondent be suspended from the practice of law for one year for his violation of these rules. After our review of the record in this case, the Court is of the opinion that the board's conclusion in regard to the respondent's violations of the rules are amply supported. Therefore, we order that the respondent be suspended from the practice of law for a total period of one year, said period of suspension to commence thirty days from the date of this opinion. In order to protect the interests of his current clients, the respondent shall file with the clerk of this Court either a list of all active clients or a statement by an attorney or attorneys who will assume responsibility to protect those clients' interests.