IN THE MATTER OF ALBERT B. WATT, JR.

Suffolk. September 14, 1999. - October 6, 1999.

Present: LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Attorney at Law,* Disciplinary proceeding, Suspension, Reciprocal discipline, Commingling of funds.

The appropriate sanction for an attorney's intentional commingling of clients' funds with his own and intentional use of the funds so as to actually and temporarily deprive the clients of their funds would have been, presumptively, an indefinite suspension from the practice of law; however, in deference to a decision of the Supreme Court of Rhode Island, which had imposed a one-year suspension on the attorney for the same conduct, this court imposed a less severe sanction than would ordinarily be imposed, namely, a two-year suspension. [234-236]

PETITION for reciprocal discipline filed in the Supreme Judicial Court for the county of Suffolk on November 4, 1997.

The case was heard by *Abrams,* J.

*Nancy E. Kaufman,* Assistant Bar Counsel.

*Albert B. Watt, Jr.,* pro se.

MARSHALL, J. The Supreme Court of Rhode Island suspended the respondent from the practice of law in Rhode Island for one year. *Matter of Watt,* 701 A.2d 319, 320 (R.I. 1997). Pursuant to S.J.C. Rule 4:01, § 16, as appearing in 425 Mass. 1319 (1997), bar counsel petitioned for the reciprocal discipline. A single justice of this court ordered the respondent's suspension from the practice of law in Massachusetts for two years. On appeal to the full court, bar counsel contends that the sanction is inadequate, and seeks the respondent's indefinite suspension.[1] We affirm the order of the single justice.

---

[1]The respondent was admitted to the Massachusetts bar on November 21, 1951. He assented to his temporary suspension, pending final disposition of this matter.

This matter arises from the following undisputed facts.[2] The respondent represented a number of individuals who had claims for personal injuries resulting from automobile accidents. Between 1993 and 1995, the respondent settled ten such personal injury claims. From his clients' settlement proceeds he withheld funds that were designated for the payment of his clients' medical bills. Rather than promptly pay the medical bills, the respondent commingled the funds with his personal funds and converted them for his own use, on occasion withdrawing the funds using an automated teller machine (ATM). The respondent repaid some of the funds before the start of the Rhode Island disciplinary investigation, and had repaid all of the funds by the time of his disciplinary hearing in that State. There were, however, "periods of inexcusable delay, in one instance in excess of three years," between his receipt of the client funds and payment of his clients' medical bills. *Matter of Watt, supra* at 320. None of the respondent's clients was financially harmed by his misconduct, but the Supreme Court of Rhode Island found that the respondent's delay in paying their medical bills temporarily exposed them to the possibility that their health care providers would institute collection proceedings against them. That court also noted that the respondent's conduct was mitigated by his otherwise unblemished record after forty-five years of practice, his sincere remorse for and embarrassment about his misconduct, and the fact that he borrowed funds from his family to pay his clients' medical bills. *Id.* at 319.

The factors mitigating the respondent's conduct did not, according to the Supreme Court of Rhode Island, constitute sufficient justification to pardon his misconduct. It found that the respondent violated his fiduciary duties to safeguard client funds by commingling client funds with personal funds and expending those funds for his own use[3]; that the respondent failed to abide by his obligation to deliver client funds promptly when he withheld those funds for inordinate periods of time with no

---

[2]So as not to "undertak[e] the often difficult and protracted task of redoing the inquiry which has already been concluded," *Matter of Lebbos*, 423 Mass. 753, 755 (1996), we rely on the findings contained in the decision of the Supreme Court of Rhode Island. See *Matter of Watt*, 701 A.2d 319 (R.I. 1997).

[3]This conduct was found to violate art. V, Rules 1.15(a) and 1.16(c) of the Supreme Court of Rhode Island Rules of Professional Conduct.

justifiable excuse[4]; and that the respondent engaged in dishonest conduct.[5] Accepting the recommendation of the Rhode Island disciplinary board, the court suspended the respondent from the practice of law for one year.

Bar counsel now seeks the respondent's indefinite suspension from the practice of law in Massachusetts. Relying on S.J.C. Rule 4:01, § 16 (3) (c), bar counsel argues that, because the discipline imposed in Rhode Island does not adequately sanction the respondent's conduct, we are not bound by any presumption that the sanction to be imposed here should be the same as the sanction imposed in "another jurisdiction." Rather, according to bar counsel, we must look only to Massachusetts cases to determine the appropriate sanction particularly where, as here, our presumptive discipline would exceed what has been imposed in the other jurisdiction. See *Matter of Daley*, 11 Mass. Att'y Discipline Rep. 57, 58 (1995). The respondent acknowledges that we are not bound by the discipline imposed by the Supreme Court of Rhode Island, but argues that a suspension "in line with the Rhode Island suspension" would be appropriate.

Bar counsel is in part correct. We need not impose the same sanction against an attorney here as has been imposed in another jurisdiction. Pursuant to S.J.C. Rule 4:01, § 16, we may impose whatever level of discipline is warranted by the facts even if that discipline exceeds, equals, or falls short of the discipline imposed in another jurisdiction. *Matter of Daley, supra* at 59, and cases cited. See *Matter of Lebbos, supra* at 757. See also *Matter of McCabe*, 411 Mass. 436, 450 (1991). We decline, however, to go so far as to say that we must always adhere strictly to the Massachusetts presumptive sanction whenever that sanction exceeds the discipline imposed by another jurisdiction.

In *Matter of the Discipline of an Attorney*, 392 Mass. 827, 835 (1984) (known as *Three Attorneys* case), we stated the "principles which will be relevant in all cases concerning attorneys' conduct which occurs after the date of this opinion." We reaffirmed those principles in *Matter of Schoepfer*, 426 Mass. 183, 185 n.2, 187 (1997):

"Intentional commingling of clients' funds with those

---

[4]This conduct was found to violate art. V, Rule 1.3 and 1.15(b).

[5]This conduct was found to violate art. V, Rule 8.4(c).

of an attorney should be disciplined by private reprimand. Unintentional, careless use of clients' funds should be disciplined by public censure.

"Intentional use of clients' funds, with no intent to permanently or temporarily deprive the client, and no actual deprivation, should be punished by a term of suspension of appropriate length.

"Intentional use, with intent to deprive or with actual deprivation, should be disciplined by disbarment or indefinite suspension."

See *Three Attorneys, supra* at 836. Although these sanctions are not mandatory, an attorney bears a "heavy burden" of showing that a particular sanction is not warranted. *Id.* at 837. Here, the respondent commingled client funds with his personal funds and converted them for his own use. The commingling and subsequent use of the funds was not inadvertent or careless. Rather, based on the findings of the Supreme Court of Rhode Island, we conclude that the respondent consciously and deliberately withheld client funds in order to pay his personal expenses. The respondent thus intentionally used his clients' funds. If the respondent had done so without intending to deprive and without actually depriving, permanently or temporarily, his clients of their funds, the respondent presumptively would be subject to punishment by "a term suspension of appropriate length" under our principles. If, however, there had been an intent to deprive or an actual deprivation, permanent or temporary, in combination with his intentional use of his clients' funds, the respondent presumptively would be subject to the more severe punishment of disbarment or indefinite suspension.

In this case there was no explicit finding by the Rhode Island court that the respondent intended to deprive his clients of their funds. It is not clear, however, that the Supreme Court of Rhode Island was required by its rules to inquire into the respondent's intent. There is no indication in the record before us whether Rhode Island follows principles equivalent to the standards we follow. See *Three Attorneys, supra* at 836. Thus, although we assume here that the respondent had no intent to deprive his clients, we also recognize that the relevant inquiry may not have been made.

There were, however, findings that support a conclusion that

the respondent actually and temporarily deprived his clients of their funds. Deprivation arises when an attorney's intentional use of a client's funds results in the unavailability of the client's funds after they have become due, and may expose the client to a risk of harm, even if no harm actually occurs. *Matter of Schoepfer, supra* at 187; *Matter of Carrigan,* 414 Mass. 368, 371 (1993); *Matter of Glick,* 13 Mass. Att'y Discipline Rep. 234 (1997). Deprivation may be temporary or permanent. *Matter of Schoepfer, supra.* Here, the deprivation occurred when, after being directed to pay his clients' medical bills from their settlement proceeds, the respondent failed to do so because he had used the funds to pay his personal expenses. The deprivation was temporary because the respondent repaid all of the funds due by the commencement of his disciplinary hearing. The respondent therefore intentionally used and temporarily deprived his clients of their funds. Applying our standards, his conduct calls for the discipline of disbarment or indefinite suspension. Had the respondent's misconduct occurred in Massachusetts, the presumptive sanction would have been indefinite suspension.

"[W]e repose confidence in and accord deference to the lawful procedures [and decisions] of our sister States . . . [b]ut . . . such deference does not automatically lead to reciprocity." *Matter of Lebbos,* 423 Mass. 753, 755 (1996). We therefore decline to impose the same sanction as that of the Supreme Court of Rhode Island. However, in deference to our sister jurisdiction and in consideration of the particular circumstances of this case, we choose to impose a sanction against the respondent that is less severe than one we ordinarily would impose, namely a suspension of two years. Accordingly, we affirm the order of the single justice and suspend the respondent from the practice of law in Massachusetts for a term of two years.

*So ordered.*